EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | |
|---|---|
| Carlos H. Raffucci Caro | 2024 TSPR 19 |
| (TS-9,263) | 213 DPR ___ |

Número del Caso:  CP-2016-0001

Fecha:  5 de marzo de 2024

Oficina del Procurador General:

>      Lcda. Karla Z. Pacheco Álvarez
>      Subprocuradora General
>
>      Lcda. Lorena Cortés Rivera
>      Subprocuradora General
>
>      Lcda. Mabel Sotomayor Hernandez
>      Subprocuradora General
>
>      Lcdo. Omar Andino Figueroa
>      Subprocurador General
>
>      Lcda. Minnie H. Rodríguez López
>      Procuradora General Auxiliar
>
>      Lcda. Yaizamarie Lugo Fontánez
>      Procuradora General Auxiliar
>
>      Lcda. Gisela Rivera Matos
>      Procuradora General Auxiliar
>
>      Lcda. Noemí Rivera de León
>      Procuradora General Auxiliar

Abogada del querellado:

>      Lcda. Margarita Carrillo Iturrino

Comisionada Especial:

>      Hon. Enid Martínez Moya

Materia: Conducta Profesional – Suspensión inmediata e indefinida del ejercicio de la abogacía y la notaría por quebrantar los Cánones 18, 35 y 38 del Código de Ética Profesional, así como los Arts. 2 y 56 de la Ley Notarial y la Regla 5A del Reglamento Notarial.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Carlos H. Raffucci Caro
    (TS-9,263)
                                CP-2016-0001

PER CURIAM

En San Juan, Puerto Rico, a 5 de marzo de 2024.

Nuevamente nos vemos en la obligación de ejercer nuestra potestad disciplinaria sobre un letrado que se apartó de los principios deontológicos que rigen la profesión jurídica. En esta ocasión, concluimos que el Lcdo. Carlos Humberto Raffucci Caro quebrantó los Cánones 18, 35 y 38 del Código de Ética Profesional, infra, así como los Arts. 2 y 56 de la Ley Notarial, infra y la Regla 5a del Reglamento Notarial, infra. En consecuencia, decretamos su suspensión inmediata e indefinida del ejercicio de la abogacía y la notaría.

I

El licenciado Raffucci Caro fue admitido a la práctica de la abogacía en 1989 y a la notaría en 1990.

El 27 de febrero de 2009, la Sra. Zor Janet Alejandro Portalatín (señora Alejandro Portalatín o promovente) presentó una queja en la que realizó imputaciones serias sobre la conducta del letrado en el desempeño de su función notarial.

El primer incidente descrito en la queja se suscitó con la escritura número uno (1) de 15 de enero de 2009 sobre dación en pago autorizada por el licenciado Raffucci Caro y presentada en el Registro de la Propiedad el 20 de mayo de 2008. En la mencionada escritura, el Sr. Pedro J. Gómez García (señor Gómez García) cedió a True Hardware Corp., representada por el Sr. Jorge Hernández Miller (señor Hernández Miller), una propiedad localizada en Manatí. Sobre ese particular, se alegó que el licenciado Raffucci Caro, luego de presentar el instrumento público ante el Registro de la Propiedad, acudió a la oficina de la señora Alejandro Portalatín y se apropió ilegalmente del comprobante original de presentación de la mencionada escritura. Tras apropiarse del comprobante, alegadamente el letrado envió a un mensajero a retirar el instrumento del Registro de la Propiedad sin el aval de los otorgantes. Luego de esto, el licenciado Raffucci Caro fungió de intermediario para que un tercero —amigo suyo— adquiriera la propiedad objeto del negocio jurídico en controversia.

En el segundo incidente, la señora Alejandro Portalatín arguyó que el licenciado Raffucci Caro anuló un testimonio en un documento titulado "Adendum a contrato de

reconocimiento de participación" fechado de 15 de diciembre de 2007, sin autorización de las partes otorgantes.

En el tercer incidente, se adujo que el licenciado Raffucci Caro, preparó, firmó y notarizó un contrato de arrendamiento, en el cual la firma de uno de los otorgantes; a saber, el señor Hernández Miller, fue falsificada. En otras palabras, se arguyó que el licenciado Raffucci Caro dio fe de un hecho falso.

Finalmente, la promovente alegó que el licenciado Raffucci Caro, como notario autorizante de la escritura de dación en pago antes mencionada, expidió bajo su firma y sello copias inconsistentes de este instrumento público. A su vez, el letrado expidió distintas versiones de un certificado de resolución corporativa junto a la escritura de referencia.

En su contestación a la queja, el letrado afirmó, respecto a la primera alegación, que los documentos relativos a la presentación de la escritura de dación en pago estaban en su oficina y que en ningún momento los sustrajo de la oficina de la promovente. El licenciado Raffucci Caro explicó que la escritura aludida se retiró porque el señor Gómez García le indicó que había llegado a un acuerdo con el señor Hernández Miller para dejar sin efecto el negocio jurídico. A su vez, el señor Gómez García le comunicó que otros dos abogados le habían aconsejado dejar sin efecto el negocio de la dación en pago. Sucesivamente, el licenciado Raffucci Caro expresó que, aunque coincidió

con el análisis de los abogados, no brindó asesoría formal al señor Gómez García sobre el asunto. Sin embargo, el letrado admitió que no corroboró la veracidad de la alegada anuencia del señor Hernández Miller sobre el retiro de la escritura.

Finalmente, el señor Raffucci Caro explicó que luego de dejar sin efecto la dación en pago sobre el inmueble, el señor Gómez García acudió a su oficina y le expresó que estaba buscando un comprador para esa finca. El letrado reconoció que le ofreció la propiedad al Sr. Giorgio Coppola Cascella, un amigo suyo de más de 20 años, quien eventualmente la adquirió.

En lo concerniente al segundo incidente, el licenciado Raffucci Caro señaló que anuló el addendum en controversia dado que por error le asignó un número que ya había sido utilizado en otro instrumento. Al percatarse de la duplicidad y por entender que no era necesario notarizar el addendum, optó por dejar sin efecto el testimonio. Además, expresó que esto ocurrió en presencia de los otorgantes.

En cuanto a la legitimidad de la firma en un contrato de arrendamiento entre JJH Import y Mansiones del Patio Inc., el licenciado Raffucci Caro reconoció que la firma no se parecía a la del señor Hernández Miller, presidente de ambas corporaciones. Sin embargo, enunció que el documento fue firmado ante él y constaba en el Registro de Testimonios, lo que creaba una fuerte presunción de veracidad. De igual modo señaló que, aunque en el contrato aparecía como fecha de

otorgamiento el 2 de enero de 2008, este fue otorgado el 9 de enero de 2008, cuando el señor Hernández Miller regresó de un viaje.

Finalmente, en lo atinente a las versiones inconsistentes de una misma resolución corporativa, el letrado arguyó que se trataba de distintas copias que se generaron en el proceso de autorizar la escritura de dación en pago y que se fueron descartando. Explicó que el certificado de resolución impreso inicialmente, indicaba una cantidad incorrecta sobre el valor de la transacción y en lugar de imprimir el documento nuevamente, borró la suma con corrector líquido. El letrado intimó que la señora Alejandro Portalatín y el señor Hernández Miller retuvieron las copias que debían ser descartadas con el fin de hacerle daño.

Tras investigar el asunto, el 25 de abril de 2014, la Oficina del Procurador General presentó un *Informe final* en el que concluyó que el licenciado Raffucci Caro había incurrido en serias faltas éticas. Consecuentemente, en cumplimiento con nuestras órdenes, el Procurador General presentó la Querella correspondiente en la cual formuló 14 cargos por incumplimiento con los Cánones 18, 19, 21, 35 y 38 del Código de Ética Profesional, infra, los Arts. 2, 41 y 56 de la Ley Notarial, infra y la Regla 5a del Reglamento Notarial, infra.[1]

---

[1] En los Cargos I, II y III se le imputó al letrado haber alterado el certificado de resolución corporativa que acompañaba la escritura de dación en pago y también haber expedido distintas versiones del mencionado instrumento público. Consecuentemente, se le imputó haber quebrantado los Cánones 15, 35 y 38 del Código de Ética Profesional, infra. En los Cargos III y IV se le imputó haber violado el Canon 18 del

Vista la querella presentada por la Oficina del Procurador General, el 21 de junio de 2017 nombramos a la Hon. Enid Martínez Moya como Comisionada Especial. Luego de un procedimiento extenso, el 4 de mayo de 2023 recibimos su informe. En síntesis, concluyó que el licenciado Raffucci Caro violó los Arts. 2 y 56 de la Ley Notarial, 4 LPRA secs. 2002, 2091; la Regla 5a del Reglamento Notarial, 4 LPRA Ap. IX. y los Cánones 18, 35 y 38 del Código de Ética Profesional, 4 LPRA Ap. IX.

Dado que varios de los cargos incluidos en la querella requieren determinaciones de credibilidad, en adelante exponemos un breve resumen de las determinaciones de hecho incluidas en el informe.

**A. *Sobre la escritura de dación en pago:***

El 15 de enero de 2008, el licenciado Raffucci Caro autorizó la escritura número uno (1) de dación en pago. En esa escritura, el señor Gómez García como deudor, le cedía

---

Código de Ética Profesional, infra, y el Art. 41 de la Ley Notarial, infra, por no incluir una nota de saca en el original de la escritura de dación en pago al expedir una copia certificada. En los cargos V, VI, VII, VIII y IX se le imputó al querellado haber dado fe de un hecho falso al asegurar que el señor Hernández Miller firmó determinado contrato de arrendamiento en su presencia. Es la posición del Estado que la firma que aparece en el mencionado contrato no es la del señor Hernández Miller. Por eso, se le imputó haber violado los Arts. 2 y 56 de la Ley Notarial, supra, la Regla 5a del Reglamento Notarial, infra, y los Cánones 35 y 38 del Código de Ética Profesional, infra. En el cargo X se le imputó haber violado el Canon 19 del Código de Ética Profesional, infra, al dejar sin efecto, unilateralmente un addendum al "Contrato de reconocimiento de participación" realizado mediante el affidávit Núm. 5818. En los Cargos XI, XII, XIII y XIV se le imputó haber asesorado a uno de los otorgantes de la escritura de dación en pago en contra de los intereses del otro. El Procurador General expresó que esa conducta constituyó conflicto de interés y a su vez, violó la Regla 5a del Reglamento Notarial, infra, así como los Cánones 21 y 38 del Código de Ética Profesional, infra.

y traspasaba a True Hardware Corp., como acreedora, determinado inmueble ubicado en Manatí. En el instrumentó público se especificó que la dación se efectuaba por el precio convenido y ajustado de $700,000. A su vez se expuso que la dación se realizaba con la intención de extinguir totalmente varias deudas por mercancía suplida por parte del acreedor.

El Sr. Máximo Guadalupe, empleado de Hernández Miller, presentó la escritura en el Registro de la Propiedad. Luego de presentarlas, el señor Guadalupe regreso a las oficinas de True Hardware Corp. con las boletas y minutas originales de presentación, y se las entregó al señor Hernández Miller. Este último se las entregó a su entonces esposa, la señora Alejandro Portalatín, quien las guardó en su escritorio.

En el ínterin, la relación de negocios entre el señor Hernández Miller y el licenciado Raffucci Caro se deterioró. Tras ocurrir varios incidentes no relacionados con esta querella, el señor Hernández Miller ordenó un estudio de título de la propiedad que había adquirido por medio de la dación en pago. Al hacerlo, advino en conocimiento de que la escritura de dación en pago había sido retirada antes de lograr la inscripción registral. La retiró una persona llamada Carlos A. Malaret Vázquez. Ante ese escenario, el señor Hernández Miller le solicitó a la señora Alejandro Portalatín, que buscara las boletas de presentación. Ella no las encontró en la gaveta de su escritorio y notó que también

habían desaparecido unas licencias de camiones que allí se guardaban.

La promovente afirmó que recordaba que el licenciado Raffucci Caro se había llevado varias cajas de documentos cuando abandonó True Hardware Corp., empresa del señor Hernández Miller en la cual el letrado tuvo una oficina por un tiempo. Alegadamente, al momento de retirarse de la oficina, el letrado afirmó que los documentos que se llevaba eran papeles para descartar. Ante ello, la señora Alejando Portalatín le envió una misiva en la que le solicitó que devolviera todos los documentos relacionados con la mencionada Compañía. En respuesta, el licenciado Raffucci Caro envió una carta en la que negó haber retirado los documentos. Sucesivamente, la promovente presentó un informe de incidente ante la Policía de Puerto Rico, sin embargo, no hizo imputación alguna contra el letrado.

Posteriormente, el señor Gómez García, quien cedió a True Hardware la propiedad en controversia, se acogió a un proceso de quiebra. La señora Alejandro Portalatín asistió a varias vistas del procedimiento y ahí advino en conocimiento de que la propiedad había sido vendida al señor Coppola Cascella. Consecuentemente, True Hardware Corp. instó una demanda para que, entre otras cosas, se dilucidara la titularidad del inmueble en pugna. Sobre el asunto, se dictó una sentencia parcial que favoreció a la empresa antes dicha.

En la sentencia parcial también se concluyó que el licenciado Raffucci Caro había orientado al señor Gómez García sobre cómo podría recuperar la finca que había cedido a True Hardware Corp., mediante el retiro de las escrituras u otorgación de acta. No obstante, durante este proceso disciplinario, el licenciado Raffucci Caro siempre negó lo anterior. Alegó que fue el señor Gómez García quien le expresó que había llegado a un acuerdo con el señor Hernández Miller para dejar sin efecto la dación en pago y le pidió que le entregara todos los documentos relacionados con ese asunto. En esa línea, el licenciado Raffucci Caro también argumentó que el señor Gómez García había recibido asesoramiento de dos abogados que le recomendaron dejar sin efecto la dación y que él, sin emitir una recomendación formal, únicamente le expresó que pensaba igual que los abogados.

No obstante, el letrado reconoció que no corroboró con el señor Hernández Miller si existía un acuerdo para dejar sin efecto el negocio, porque su relación con este no estaba en buenos términos. Durante una vista celebrada por la Comisionada Especial, el licenciado Raffucci Caro dio otra explicación. En específico, esbozó que no le pareció necesario comunicarse con el señor Hernández Miller porque sabía que este último no había cumplido con los acuerdos asumidos con el señor Gómez García y entendía que lo más conveniente era rescindir el negocio. Asimismo, durante otra vista ante la Comisionada Especial, el letrado reiteró que

no tenía que comunicarse con el señor Hernández Miller "ni como notario, ni como astronauta, ni como nada más". Informe de la Comisionada Especial, pág. 123.

El licenciado Raffucci Caro explicó que, semanas luego del retiro de la escritura de dación en pago, el señor Gómez García visitó su oficina y le solicitó que le ayudara a buscar un comprador para el inmueble. Acto seguido, el letrado admitió que le ofreció la propiedad en controversia a su amigo, el señor Coppola Cascella. A su vez, expresó que asistió al otorgamiento de la escritura de compraventa a petición del señor Coppola Cascella, pero no fue quien autorizó ese negocio jurídico. De la vista evidenciaria en el caso civil respecto a la titularidad del inmueble, surge que el licenciado Raffucci Caro fue la persona que realizó todas las gestiones y negociaciones para que el señor Coppola Cascella adquiriera la propiedad sobre la cual anteriormente el propio letrado había autorizado la escritura de dación en pago.

Es de notar que la Comisionada Especial destacó en su informe que, en el expediente de la reclamación civil en la que True Hardware Corp. litigó la titularidad del inmueble, el licenciado Raffucci Caro ofreció una versión diferente sobre los hechos. Particularmente, el letrado dijo que el señor Gómez García acudió a su oficina y le expresó que quería recobrar la propiedad que había dado en pago porque el señor Hernández Miller no había satisfecho ninguna de sus obligaciones. En ese entonces, el letrado le comentó al señor

Gómez García que no creía que el señor Hernández Miller le iba a cumplir y le indicó los pasos que debía seguir para prescindir del negocio. En ningún momento mencionó que otros dos abogados fueron quienes le brindaron asesoría al señor Gómez García.

Tras evaluar toda la prueba sobre este asunto, incluyendo los testimonios de las partes, la Comisionada Especial no hizo determinación de credibilidad respecto a quién tenía las boletas de presentación de la escritura en disputa ni quien ordenó su retiro. Enfatizó que este era un caso complicado, en el que se brindaron muchas versiones que no se pudieron corroborar.

Empero, determinó que tenía prueba clara, robusta y convincente para concluir que el licenciado Raffucci Caro asesoró al señor Gómez García respecto al curso a seguir para dejar sin efecto la escritura de dación en pago. Consecuentemente, concluyó que este violó la Regla 5a del Reglamento Notarial, supra, que impone al notario que ha autorizado una escritura el deber de actuar con imparcialidad durante el otorgamiento de esta y con posterioridad. Al no cumplir con su obligación, el letrado provocó que la propiedad fuera vendida por quien no era su dueño. A su vez, la Comisionada Especial concluyó que la actuación del letrado violó el Canon 38 del Código de Ética Profesional, supra.

**B. Sobre las versiones inconsistentes de la misma resolución corporativa**

Por otra parte, el otorgamiento de la escritura de dación en pago requirió que se preparara una resolución corporativa para autorizar al señor Hernández Miller a representar a True Hardware Corp., en calidad de presidente. La primera versión impresa de la resolución tenía un error al indicar que el valor de la dación en pago era de $800,000 en lugar de $700,000. Al percatarse de la situación, el licenciado Raffucci Caro procedió a tachar la cuantía con corrector líquido. El letrado adujo que decidió corregir la cantidad en lugar de imprimir otro documento porque una resolución corporativa no requiere especificar el valor del negocio para el cual se prepara y que lo hizo en presencia de las partes.

A juicio de la Comisionada Especial, las circunstancias que rodearon la firma de esa resolución corporativa no quedaron claras del todo. Por eso, sin hacer una determinación de credibilidad respecto a los motivos de las inconsistencias en las copias de las mencionadas resoluciones, la Comisionada concluyó que la manera en que el licenciado Raffucci Caro manejó la corrección de los errores en dichos documentos denota descuido y negligencia en el ejercicio de la notaría. Entiéndase que los errores cometidos en las resoluciones corporativas podían subsanarse destruyendo el documento y preparando uno nuevo, o mediante los métodos establecidos en el Art. 32 de la Ley Notarial, 4 LPRA sec. 2050, vigente al momento de los hechos. Empero, los documentos notariales no pueden subsanarse utilizando

corrector líquido. Al actuar de esa manera, el letrado violó los Cánones 18 y 38 del Código de Ética Profesional, <u>supra</u>.

**C.   *Anulación de un addendum sin autorización de las partes***

Por otro lado, el 12 de diciembre de 2007 se suscribió un addendum a un contrato de reconocimiento de participación. Este addendum se notarizó mediante el testimonio número 5818. El letrado se dio cuenta de la duplicidad y decidió corregirla cancelando el testimonio del addendum. Razonó que como el contrato de reconocimiento de participación no había sido notarizado, el addendum tampoco tenía que serlo. El licenciado Raffucci Caro procedió entonces a incluir a mano: "[c]ertifico que este testimonio es nulo y que este documento no está notarizado. Yo, el notario". Tanto el señor Hernández Miller como la promovente de la queja alegaron que no se les notificó sobre la anulación del addendum. El licenciado Raffucci Caro por su parte, aseguró que había puesto la nota en presencia de las partes.

Respecto a este incidente, la Comisionada Especial concluyó que no había prueba clara, robusta y convincente para determinar que el letrado violó el Canon 19 de Ética Profesional, <u>supra</u>.

**D. *Sobre la legitimidad de la firma del otorgante en un contrato de arrendamiento***

Por otra parte, en lo concerniente a un contrato de arrendamiento de una propiedad inmueble suscrito el 2 de enero de 2008 y notarizado por el licenciado Raffucci Caro, la señora Alejandro Portalatín alegó que el día en que se

otorgó el contrato, el señor Hernández Miller, quien aparecía como suscribiente, no estaba en Puerto Rico. Sucesivamente, adujo que la firma que aparecía en el documento había sido falsificada.

En la contestación a la querella, el letrado expresó que la firma del contrato estaba pautada para efectuarse el 2 de enero de 2008 pero no pudo hacerse porque Hernández Miller se encontraba de viaje. Explicó que el contrato de arrendamiento se suscribió el 9 de enero de 2008 pero por error, en el documento se mantuvo la fecha de 2 de enero de 2008.

Ahora bien, durante una vista ante la Comisionada Especial celebrada el 23 de enero de 2023, el licenciado Raffucci Caro testificó que el contrato se había suscrito el 2 de enero de 2008. Tras ser increpado por lo expresado en la contestación a la querella, este se sostuvo en que el contrato fue suscrito el 2 de enero de 2008.

Tras evaluar la firma en el mencionado contrato de arrendamiento, dos peritos presentaron posturas opuestas. El perito del Estado concluyó que la firma no correspondía a la del señor Hernández Miller, mientras que el perito del licenciado Raffucci Caro concluyó que el señor Hernández Miller tenía la capacidad de modificar su firma.

No obstante, al evaluar toda la prueba, la Comisionada Especial no le dio credibilidad a la conclusión del perito del letrado. Explicó que este no evidenció la utilización de métodos confiables en la comunidad científica para llegar a

su determinación. Así las cosas, determinó que la firma que aparecía en el contrato de arrendamiento no era la de Hernández Miller y en consecuencia, que el licenciado Raffucci Caro dio fe de un hecho falso. En consecuencia, el letrado violó los Arts. 2 y 56 de la Ley Notarial, supra, así como los Cánones 35 y 38 del Código de Ética Profesional, supra.

Al concluir su informe, la Comisionada Especial no recomendó una sanción específica para el licenciado Raffucci Caro. Empero, destacó que este en ningún momento aceptó sus faltas o pidió disculpas por la conducta imputada. De igual forma, señaló que el letrado tiene historial disciplinario previo. Finalmente, solicitó que este Tribunal impusiera la sanción que entendiera correspondiente.

Con este marco fáctico, el asunto quedó sometido para nuestra determinación final.

II

**A. Disposiciones Notariales**

En el descargo de sus funciones los abogados y notarios deben observar el Código de Ética Profesional, la Ley Notarial de Puerto Rico, y el Reglamento Notarial. De lo contrario se exponen a severas sanciones disciplinarias. In re Maldonado de Jesús, 208 DPR 601, 611 (2022).

En esa línea, la fe pública es la espina dorsal del sistema notarial. Íd. págs. 611-612; In re Torres Rivera, 204 DPR 1, 11 (2020); In re Pagán Díaz, 198 DPR 398, 404 (2017). Es la presunción controvertible de legalidad,

corrección y exactitud, tanto formal como sustantiva de la que se reviste un documento que ha sido autorizado por un notario. En ese sentido, un documento notarial avalado por la dación de fe brinda la confianza de que los hechos jurídicos y las circunstancias acreditadas en efecto fueron percibidos o comprobados por el notario. In re González Pérez, 208 DPR 632, 645-646 (2022); In re Villalona Viera, 206 DPR 360, 370 (2021). "Es precisamente esta representación de la fe pública notarial la que establece la diferencia entre la función que desempeña el abogado y la del notario". In re Colón Ramery I, 133 DPR 555, 562 (1993).

En ese contexto, el notario, como depositario de la fe pública notarial tiene el deber de ser imparcial antes, durante y después del otorgamiento de un instrumento público. En consonancia, la Regla 5a del Reglamento Notarial, 4 LPRA Ap. XXIV, dispone que "[h]ay ciertas actuaciones o gestiones no notariales incompatibles con dicha función que afectan la imparcialidad del notario y menoscaban la fe pública de la que está investido". Entre estas, al notario autorizante de un instrumento público le está vedado actuar como agente de cierre, agente de desembolso o agente de seguro de título, o desempeñar funciones similares en el negocio jurídico o transacción que motivó su intervención. Íd.

Por otra parte, el Art. 56 de la Ley Notarial, 4 LPRA sec. 2091, establece que un testimonio o declaración de autenticidad es el documento en el cual un notario, a

solicitud de una parte interesada, da testimonio de fe de un documento no matriz, además de su fecha. En esencia, el notario acredita que, en fecha cierta, se firmó un documento en su presencia por la persona que evidentemente es quien dice ser. Íd. Así pues, los notarios no pueden dar fe notarial en un documento en el cual la persona que pretende la otorgación no compareció personalmente. In re González Pérez, supra.

### B. Cánones de Ética Profesional

Por otro lado, este Tribunal tiene el deber ineludible de cerciorarse de que los profesionales que son admitidos al ejercicio de la abogacía y la notaría realicen sus funciones de forma competente, responsable y diligente. In re Montañez Morales, 2023 TSPR 11, 212 DPR ___ (2023); In re Meléndez Artau, 2023 TSPR 60, 212 DPR ____ (2023); In re Colón Olivo I, 211 DPR 5 (2023); In re Lewis Maymó, 205 DPR 397, 402 (2020). En ese renglón "[s]erá impropio de un abogado asumir una representación profesional cuando está consciente de que no puede rendir una labor idónea competente y que no puede prepararse adecuadamente sin que ello apareje gastos o demoras irrazonables a su cliente o a la administración de la justicia". Canon 18 del Código de Ética Profesional, supra. El Canon 18 de Ética Profesional condena la desidia y la displicencia en los asuntos que le son encomendados a los abogados. In re Maldonado de Jesús, supra.

De igual forma, todo miembro de la profesión legal debe conducirse de forma honesta y honrada ante los tribunales,

para con sus representados y en las relaciones con sus compañeros. Canon 35 del Código de Ética Profesional, supra. Con este precepto ético se pretende resaltar la verdad como atributo inseparable del abogado. In re Cardona Estelritz, 2023 TSPR 100, 212 DPR ___ (2023). "Para actuar de conformidad con el mandato de este canon, es indispensable que los abogados se aseguren de no proveer información falsa o incompatible con la verdad y de no ocultar información cierta que deba ser revelada". In re Aponte Morales, 2023 TSPR 13, 211 DPR 171 (2023). En el ejercicio de la abogacía este canon se incumple por el simple hecho de faltar a la verdad, independientemente de las razones. In re Lugo Quiñones, 206 DPR 1, 12 (2021); In re Charbonier Laureano, 204 DPR 351, 364 (2020).

Este deber de sinceridad y honradez se extiende a la conducta del abogado en su función notarial. In re Tejada Rivera, 155 DPR 175 (2001). En esa línea, la certificación de un hecho falso es una de las faltas más graves que puede cometer un notario. In re González Pérez, supra; In re Santiago Rodríguez, 206 DPR 853, 861 (2021); In re Flores Martínez, 199 DPR 691, 702 (2018). Este proceder transgrede la fe pública notarial y afecta la confianza del sistema de autenticidad documental. In re Vázquez Margenat, supra, págs. 978-979; In re Arocho Cruz, supra; In re Llanis Menéndez, 175 DPR 22, 26 (2008). De ahí que, en esos escenarios no se considera defensa el no haber procedido de mala fe ni deliberadamente, no haber actuado con la intención

de defraudar o engañar, así como no haber causado daño o perjuicio a un tercero. In re Maldonado de Jesús, supra, pág. 617. Dar fe de un hecho falso es una falta tan grave que, además de quebrantar la Ley Notarial y el Reglamento Notarial, supra, también constituye una violación de los Cánones 18, 35 y 38 del Código de Ética Profesional. In re Vázquez Margenat, supra, pág. 979.

Por último, es ampliamente conocido que todo abogado debe conducirse en forma digna y honorable, tanto en su vida privada como en el desempeño de su profesión. In re Cardona Estelritz, supra; In re Bermúdez Meléndez, 198 DPR 200 (2017). Conforme al Canon 38 del Código de Ética Profesional, supra, los integrantes de la profesión legal deben esforzarse al máximo de sus capacidades para exaltar el honor y la dignidad de la profesión, aunque ello conlleve sacrificios personales. In re Maldonado de Jesús, supra.

## III

Luego de ponderar minuciosamente los hechos y el derecho aplicable, coincidimos con la apreciación de la Comisionada Especial y le brindamos deferencia por ser quien tuvo oportunidad de recibir y examinar la prueba. Véanse, In re Meléndez Mulero, 208 DPR 541, 554 (2022); In re Colón Ortiz, 204 DPR 452, 461 (2020). De una evaluación integral del expediente, surge que el licenciado Raffucci Caro antepuso sus conflictos interpersonales a su deber de exaltar el honor y la dignidad de la profesión, aunque ello

conlleve sacrificios personales. Así, cometió serias faltas en el ejercicio de su función pública notarial.

En primer lugar, el licenciado autorizó una escritura de dación en pago y luego orientó a uno de los otorgantes sobre cómo dejar sin efecto el negocio y retirar el instrumento del Registro de la Propiedad, sin consultarlo con la otra parte. Admitió que en ningún momento corroboró con el señor Hernández Miller si autorizaba dejar sin efecto la dación del inmueble, porque tenía conflictos personales con este. Como si fuera poco, luego de provocar que la escritura se retirara, gestionó y facilitó que un amigo suyo adquiriera esa propiedad de quien ya no era su dueño.

Definitivamente, el licenciado Raffucci Caro incurrió en conducta altamente impropia. Su actuación da al traste con el deber de imparcialidad que tiene un notario como depositario de la fe pública notarial, que no puede ponerse en tela de juicio por actos posteriores o simultáneos al otorgamiento del instrumento público.

Reconocemos que la Regla 5a del Reglamento Notarial, supra, define expresamente unas funciones que le están prohibidas al notario que autoriza una escritura; a saber, desempeñarse como agente de cierre, agente de desembolso o agente de título. Ese no es el caso del licenciado Raffucci Caro. Aquí, tampoco está presente la figura del notario que, luego de autorizar un instrumento público representa a uno de los otorgantes en un litigio relacionado con esa escritura. Véanse, Regla 5 del Reglamento Notarial, supra,

e <u>In re Colón Ramery II</u>, 138 DPR 793 (1995). No obstante, no albergamos dudas de que son situaciones como las ocurridas en este caso las que hemos intentado prevenir para que no se vea afectada la imparcialidad del notario y de la fe pública de la cual es custodio.

Ciertamente, asesorar a un otorgante para que retire del Registro de la Propiedad un instrumento público en el que se fungió como notario autorizante, en perjuicio de la otra parte otorgante y sin su consentimiento, quebranta el deber de imparcialidad que debe caracterizar la práctica notarial. Por lo tanto, pautamos que este proceder constituye una violación del Art. 5a del Reglamento Notarial, <u>supra</u>. Asimismo, al desempeñar sus funciones movido por animosidad, el licenciado Raffucci Caro incurrió en conducta impropia y faltó a su deber de exaltar el honor y la dignidad de la profesión.

En segundo lugar, le brindamos deferencia a la Comisionada Especial en su conclusión de que el letrado dio fe de un hecho falso al legitimar un contrato de arrendamiento en el que la firma del otorgante, señor Hernández Miller fue falsificada. Así, el licenciado Raffucci Caro incurrió en otra falta grave en el desempeño de su encomienda.

No pasamos por alto que el letrado ofreció versiones contradictorias en sus escritos ante este Tribunal y en el procedimiento de audiencias ante la Comisionada Especial. Primero manifestó que la fecha de otorgamiento que aparecía

en el contrato de arrendamiento —2 de enero de 2008— no era certera, dado que se había firmado en una fecha posterior. Consta en el expediente, que el 2 de enero de 2008 el señor Hernández Miller no se encontraba en Puerto Rico. No obstante, en la vista en su fondo celebrada por la Comisionada Especial, el letrado cambió su versión de los hechos y sostuvo que el contrato se firmó en la fecha que surge del documento. Evidentemente, el letrado quebrantó gravemente su deber de sinceridad y honradez. Lo que es peor aún, le mintió a este Tribunal.

Llegado este punto, nos corresponde ahora evaluar la sanción a imponerse al licenciado Raffucci Caro por sus serias infracciones. En esa tarea, juegan un papel importante los criterios siguientes: la buena reputación del abogado en la comunidad; su historial previo; si el caso que se examina constituye la primera falta y si ninguna parte ha resultado perjudicada; la aceptación de la falta y su sincero arrepentimiento; si se trata de una conducta aislada; el ánimo de lucro que medió en su actuación; resarcimiento al cliente, y cualesquiera otras consideraciones, ya sean atenuantes o agravantes, que medien en relación con los hechos. Véanse, In re Meléndez Mulero, supra, págs. 555-556; In re Lajara Radinson, 207 DPR 854, 866 (2021); In re Roldán González, 195 DPR 414, 426 (2016).

Esta no es la primera situación disciplinaria del letrado. En In re Raffucci Caro, 206 DPR 589 (2021), atendimos otra querella en su contra por su desempeño

deficiente en una encomienda notarial. En aquella ocasión, la sanción impuesta fue una amonestación. En esta ocasión, el licenciado Raffucci Caro no reconoció haber cometido las faltas imputadas e incluso, dio versiones inconsistentes y contradictorias sobre los hechos. Su actitud está lejos de ser el paradigma de conducta que debe exhibir todo letrado en el desempeño de sus funciones y, por tanto, amerita la máxima sanción disciplinaria.

Por los fundamentos expuestos, decretamos la suspensión inmediata e indefinida del ejercicio de la abogacía y la notaría del Lcdo. Carlos Humberto Raffucci Caro. Como consecuencia, se le impone el deber de notificar a todos sus clientes sobre su inhabilidad para continuar representándoles. Del mismo modo, se le ordena que devuelva a sus clientes los expedientes de los casos pendientes y cualquier cantidad recibida en honorarios por los servicios no rendidos. Se le impone también la obligación de informar oportunamente de su suspensión a los foros judiciales y administrativos en los que tenga asuntos pendientes. Por último, acreditará a este Tribunal el cumplimiento con lo aquí ordenado, incluyendo una lista de los clientes y los foros a quienes le notificó su suspensión, dentro del término de 30 días, contado a partir de la notificación de esta Opinión *Per Curiam* y Sentencia.

De otra parte, se ordena al Alguacil de este Tribunal incautar inmediatamente la obra y sello notarial del Sr. Carlos Humberto Raffucci Caro y entregarlos al Director de

la Oficina de Inspección de Notarías (ODIN) para el correspondiente examen e informe. La fianza notarial queda automáticamente cancelada y se considerará buena y válida por tres (3) años después de su terminación, en cuanto a los actos realizados durante el periodo en que estuvo vigente.

Notifíquese esta Opinión *Per Curiam* y Sentencia por medio del correo electrónico registrado en el Registro Único de Abogados y Abogadas de Puerto Rico (RUA) al Sr. Carlos Humberto Raffucci Caro. El recibo de esta notificación será confirmado por la vía telefónica.

Se dictará Sentencia en conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Carlos H. Rafucci Caro
     (TS-9,263)

                              CP-2016-0001

                         SENTENCIA

        En San Juan, Puerto Rico, a 5 de marzo de 2024.

        Por los fundamentos antes expuestos en la Opinión que antecede, la cual se hace formar parte de esta Sentencia, decretamos la suspensión inmediata e indefinida del ejercicio de la abogacía y la notaría del Lcdo. Carlos Humberto Raffucci Caro. Como consecuencia, se le impone el deber de notificar a todos sus clientes sobre su inhabilidad para continuar representándoles. Del mismo modo, se le ordena que devuelva a sus clientes los expedientes de los casos pendientes y cualquier cantidad recibida en honorarios por los servicios no rendidos. Se le impone también la obligación de informar oportunamente de su suspensión a los foros judiciales y administrativos en los que tenga asuntos pendientes. Por último, acreditará a este Tribunal el cumplimiento con lo aquí ordenado, incluyendo una lista de los clientes y los foros a quienes le notificó su suspensión, dentro del término de 30 días, contado a partir de la notificación de esta Opinión *Per Curiam* y Sentencia.

        De otra parte, se ordena al Alguacil de este Tribunal incautar inmediatamente la obra y sello notarial del Sr. Carlos Humberto Raffucci Caro y entregarlos al Director de la Oficina de Inspección de Notarías (ODIN) para el  correspondiente examen e

informe. La fianza notarial queda automáticamente cancelada y se considerará buena y válida por tres (3) años después de su terminación, en cuanto a los actos realizados durante el periodo en que estuvo vigente.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.


Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo