EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: <br><br><br> Rafael H. Román Jiménez <br><br> (TS-9,606) | 2024 TSPR 9 <br><br> 213 DPR ___ |

Número del Caso: AB-2023-0057

Fecha: 6 de febrero de 2024

Oficina de Inspección de Notarías:

    Lcdo. Manuel E. Ávila De Jesús
    Director

Abogada del promovido:

    Lcda. Daisy Calcaño López

Materia: Conducta Profesional – Suspensión inmediata del ejercicio de la notaría por el término de tres (3) meses por apartarse de los principios cardinales recogidos en el Art. 2 de la Ley Notarial de Puerto Rico y por infracción a los Cánones 18, 19 y 35 del Código de Ética Profesional.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| *In re*:<br><br>Rafael H. Román Jiménez<br>(TS-9,606) | AB-2023-0057 | Conducta profesional |

**PER CURIAM**

En San Juan, Puerto Rico, a 6 de febrero de 2024.

Nos corresponde ejercer nuestra autoridad disciplinaria sobre un miembro de la profesión de la abogacía por sus ejecutorias en calidad de notario. Tras concluir que el Lcdo. Rafael H. Román Jiménez (licenciado Román Jiménez o promovido) se apartó de los principios de puntillosidad y honradez que deben caracterizar al notariado, decretamos su suspensión inmediata del ejercicio de la notaría por el término de tres (3) meses. Veamos.

**I**

El licenciado Román Jiménez fue admitido al ejercicio de la abogacía el 8 de agosto de 1990 y al notariado el 7 de septiembre de 1990. En lo que aquí nos concierne, el pasado 14 de marzo de 2023, la Sra. María de Lourdes Adorno Montañez (señora Adorno Montañez o promovente) presentó una *Queja* contra este primero.

Según esbozó la promovente en su escueta alegación, el licenciado Román Jiménez había incumplido ciertas gestiones atinentes al otorgamiento de una escritura, había consignado un precio incorrecto en el instrumento público y no había atendido una deuda que la propiedad objeto del

negocio tenía con el Centro de Recaudación de Impuestos Municipales (CRIM).

Tras concederle una prórroga para ello, el promovido contestó la *Queja* y rechazó haberse apartado de los postulados éticos que le exigen la Ley Notarial de Puerto Rico, *infra*, y el Código de Ética Profesional, *infra*. Fue su postura, que las omisiones que le imputaba la promovente en realidad se trataban de funciones que no le competían como notario y que estaban fuera de su control.

Así las cosas, la Oficina de Inspección de Notarías (ODIN) rindió un *Informe* tras haber realizado la investigación correspondiente. A continuación, relatamos el trasfondo fáctico según recogido por dicha dependencia.

Alla para el 24 de julio de 2020, el promovido fungió como notario autorizante de la *Escritura Núm. 74 sobre Compraventa y Designación de Hogar Seguro*. Surge de los autos que al otorgamiento de dicha escritura comparecieron los hermanos Enid Vargas Algarín, Edith Gladys Vargas Algarín, Hilda Luz Vargas Algarín y Rafael Eugenio Vargas Algarín en calidad de vendedores. A su vez, compareció la señora Adorno Montañez en calidad de compradora.

Del historial encontramos que los vendedores constituían la Sucesión de Rafael Eugenio Vargas Rosa y la Sucesión de Francisca Algarín Carrillo. Mediante el instrumento público, la promovente adquirió de estos primeros una propiedad ubicada en el Municipio de Río Grande, la cual constaba inscrita en el Registro

Inmobiliario Digital (RID) en favor de los fenecidos esposos Rafael Eugenio Vargas Rosa y Francisca Algarín Carrillo.

En la escritura se hizo constar que los vendedores habían adquirido la propiedad mediante la sucesión intestada de sus progenitores. No obstante, se aclaró que las respectivas *Resoluciones sobre Declaratoria de Herederos*, emitidas por el Tribunal de Primera Instancia, se encontraban **pendientes de presentación**. Por ello, al momento de otorgarse la escritura, **el derecho hereditario de los vendedores no estaba inscrito en el RID.**

Por otra parte, surge que para esa misma fecha no se habían radicado en el Departamento de Hacienda las respectivas *Planillas de Caudal Relicto* correspondientes a ambas sucesiones. Como consecuencia de ello, tampoco se habían obtenido los *Certificados de Cancelación de Gravamen* respecto a cada uno de los causantes.

Sobre este particular, la ODIN señala que la ausencia de estos trámites obedece a que existía una deuda de contribuciones territoriales sobre el inmueble debidas al CRIM que, al 20 de julio de 2020, ascendía a $11,467.87. Así las cosas, **para la fecha en la cual la ODIN presentó su *Informe*, no se habían radicado aún las *Planillas de Caudal Relicto* ante el Departamento de Hacienda ni se habían obtenido los correspondientes relevos.**

En su escrito, la ODIN concluyó que el promovido carecía de autoridad legal para impartirle la fe pública notarial a la escritura pues **al momento del otorgamiento no**

**contaba con la certificación de cancelación de deuda o relevo de herencia**, emitida por el Departamento de Hacienda. Lo anterior, en contravención a la Sec. 2054.05 del Código de Rentas Internas, *infra*. Más aun, el promovido reconoció en su contestación que obtener ese relevo no era posible hasta en tanto se saldara la deuda con el CRIM.

A juicio de la ODIN, tales omisiones constituyen una infracción al deber de competencia que surge del Art. 2 de la Ley Notarial de Puerto Rico, *infra*, y el Canon 18 del Código de Ética Profesional, *infra*. Por otra parte, la ODIN sostiene que el promovido igualmente se apartó de los postulados del Canon 19 del Código de Ética Profesional, *infra*, en tanto no mantuvo a la promovente informada de las gestiones atinentes a la escritura por espacio de más de tres (3) años.

Por tales motivos, la ODIN recomendó, entre otras sanciones,[1] suspender al licenciado Román Jiménez del ejercicio de la notaría por el término de tres (3) meses. Además, recomendó que le apercibiéramos a este de su deber de dar fiel cumplimiento en el futuro a los postulados que emanan de la Ley Notarial de Puerto Rico, *infra*, y el Código de Ética Profesional, *infra*.

Así las cosas, previo a que le ordenásemos a las partes que se expresaran sobre el *Informe* de la ODIN, el promovido

---

[1] Al momento de rendir su *Informe*, la ODIN recomendó un referido simultaneo a la Oficina del Procurador General para la investigación de rigor. No obstante, como señalaremos posteriormente, la ODIN omitió esta recomendación en ocasión de suplementar su *Informe* y únicamente mantuvo la recomendación de suspender y apercibir.

interpuso una *Moción* en la que nos informó que había presentado ante el RID las correspondientes instancias sobre derechos hereditarios y sobre la escritura de compraventa. Enterados de ello, le concedimos un término a las partes para expresarse sobre el *Informe*.

En cumplimiento de ello, el licenciado Román Jiménez presentó una *Reacción al Informe de la Oficina de Inspección de Notarías* y nos informó que **la escritura objeto de esta *Queja* había sido inscrita en el Registro de la Propiedad el pasado 3 de octubre de 2023**. Por lo demás, concedió que "si bien es cierto que **la conducta desplegada por el compareciente puede llevar a la determinación de esta Honorable Curia que incurrió de los cánones señalados**, no obstante, saltan a la vista circunstancias que deben ser evaluadas por esta Honorable Curia a la hora de ejercer su función disciplinaria".[2] (Negrillas suplidas).

En resumen, atribuyó su conducta "**a circunstancias que no estuvieron bajo su control absoluto**" y alegó que no hubo ánimo de lucro ni se causó daño a terceros o a la promovente.[3] (Negrillas suplidas). Por estos motivos, solicitó que archiváramos la *Queja*, tras considerar los atenuantes que había expresado.

Finalmente, le concedimos un término a la ODIN para que suplementara su *Informe* a la luz de lo expuesto por el promovido. Consecuentemente, la ODIN presentó una *Moción en*

---

[2] *Reacción al Informe de la Oficina de Inspección de Notarías*, pág. 7.
[3] *Íd.*

*Cumplimiento de Orden* y reiteró su recomendación de suspender del ejercicio de la notaría al promovido por espacio de tres (3) meses, acompañado del correspondiente apercibimiento sobre su conducta futura. En esta ocasión, omitió una recomendación de darle trámite ulterior al asunto mediante un referido a la Oficina del Procurador General (OPG).

La ODIN destacó, que, aun cuando se hubiese logrado la inscripción de la escritura, el promovido **"no debió haber esperado que sus faltas fuesen traídas a la atención de este Tribunal como resultado de un procedimiento disciplinario para corregirlas"**.[4] (Negrillas suplidas).

En respuesta a ello, el promovido reiteró que, si bien su conducta bien pudiese conducirnos a una determinación de que este incurrió en las violaciones éticas imputadas, deberíamos igualmente evaluar ciertos factores atenuantes a la hora de ejercer nuestra función disciplinaria.[5] Consecuentemente, afirmó que este Tribunal debería darle la oportunidad de presentar y contrainterrogar testigos en un procedimiento posterior ante un(a) Comisionado(a) Especial, tras ordenar a la OPG que investigue el asunto y presente una *Querella*.[6]

---

[4] *Moción en Cumplimiento de Orden*, pág. 3.
[5] *Reacción a Moción en Cumplimiento de Orden*, pág. 6.
[6] *Íd.*, págs. 7-8.

**II**

   **A.**   *Art. 2 de la Ley Notarial de Puerto Rico*

Dispone el Art. 2 de la Ley Notarial de Puerto Rico, que

> El notario es el profesional del Derecho que ejerce una función pública, autorizado para dar fe y autenticidad conforme a las leyes, de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen, sin perjuicio de lo dispuesto en las leyes especiales. Es su función recibir e interpretar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y conferirle autoridad a los mismos. La fe pública al notario es plena respecto a los hechos que, en el ejercicio de su función personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento.[7]

Esta disposición recoge el principio rector de la fe pública notarial, lo que hemos llamado reiteradamente la espina dorsal del notariado.[8] En virtud de este precepto el notario viene llamado a ejercer su ministerio con esmero, diligencia y estricto celo profesional.[9] La fe pública del notario implica que el documento otorgado ante sí cumple con todas las formalidades exigidas en ley y que este constituye una **transacción válida y legítima**.[10]

Tan importante es el principio de la fe pública notarial que hemos resuelto que **no es necesario que el notario falte a la verdad intencionalmente** para que incurra

---

[7] 4 LPRA sec. 2002.
[8] *In re: Vázquez Margenat*, 204 DPR 968, 977 (2020).
[9] *Íd.*
[10] *Íd.*

en una violación a ella.[11] Además, el notario tiene un deber ineludible de ofrecer asesoramiento legal a los otorgantes sobre las circunstancias del otorgamiento, así como las posibles consecuencias jurídicas que puede entrañar el negocio celebrado.[12] Cuando, a juicio del notario, **"el acto o negocio jurídico que va a autorizar sea contrario a las leyes, a los postulados éticos o a la moral, <u>deberá negarse a dar fe de tal acto</u>"**.[13]

 **B.** *Sec. 2054.05 del Código de Rentas Internas de 2011*

La Sec. 2054.05 del Código de Rentas Internas recoge una serie de prohibiciones respecto a la propiedad perteneciente a un caudal relicto con relación al cual no se haya presentado el certificado de cancelación de gravamen.[14] De tratarse de un bien que no cuente con el correspondiente relevo de deuda, **"ningún notario autorizará, expedirá o certificará documento alguno de división o distribución, <u>venta</u>, entrega, cesión o hipoteca de tal propiedad"**.[15] (Negrillas suplidas).

 **C.** *Canon 18 del Código de Ética Profesional*

El Canon 18 del Código de Ética Profesional recoge el deber que tienen los profesionales del derecho de ejercer sus funciones de manera competente, cuidadosa y diligente.[16]

---

[11] *Íd.*, pág. 978.
[12] *In re: Torres Rivera*, 204 DPR 1, 12(2020)
[13] *Íd.*
[14] 13 LPRA sec. 31165.
[15] *Íd.*
[16] 4 LPRA Ap. IX.

En lo atinente a la notaría, "[i]nfringe este canon el notario que toma livianamente el celo de la custodia de la fe pública notarial, al no ejercer la profesión con el cuidado y la prudencia que esta requiere".[17] A su vez, hemos resuelto que la función notarial es de carácter personal, indivisible e indelegable, **de completa responsabilidad del notario autorizante.**[18] Consecuentemente, "el desconocimiento de las normas jurídicas al ejercer la profesión vulnera la naturaleza misma del notariado e implican una violación al Canon 18".[19]

    **D.**   *Canon 19 del Código de Ética Profesional*

Por su parte, el Canon 19 del Código de Ética Profesional le exige al abogado mantener a sus clientes informados de todo asunto importante que surja en el desarrollo del caso.[20] De este modo, "cuando el notario no advierte a los otorgantes sobre las circunstancias del negocio jurídico y sus efectos, infringe también el Canon 19".[21] **Viola también esta disposición un notario que no mantiene a su cliente informado del <u>estado de presentación de una escritura</u>.**[22] (Negrillas suplidas).

    **E.**   *Canon 35 del Código de Ética Profesional*

Finalmente, el Canon 35 del Código de Ética Profesional recoge el deber que tienen los profesionales del derecho de

---

[17] *In re: Vázquez Margenat*, supra, pág. 979.
[18] *Íd.*
[19] *In re: Sánchez Reyes*, 204 DPR 548, 567 (2020).
[20] 4 LPRA Ap. IX.
[21] *In re: Sánchez Reyes*, supra, pág. 571.
[22] *Íd.*

comportarse de forma sincera y honrada.[23] Respecto a cómo esta obligación afecta a los notarios, hemos dicho que "el notario que asevere cualquier hecho en un instrumento público **que no concuerde con la verdad**, infringe la fe pública notarial que, a su vez, constituye una violación al Canon 35 del Código de Ética Profesional, *supra*, **independientemente de si hubo intención de faltar a la verdad**".[24] (Negrillas suplidas). **No es defensa la ausencia de haber obrado de mala fe, deliberadamente o sin la intención de engañar como tampoco lo es que no se haya causado daño a un tercero.**[25]

### III

De entrada, debemos considerar si el asunto disciplinario ante nos se encuentra presto para ser resuelto en sus méritos. Esto, pues la ODIN y la representación del promovido discrepan sobre el curso procesal que debe seguir este asunto. Consideremos a continuación.

Un examen integral de este expediente nos dirige a la naturaleza real de esta controversia. Aquí, no hay en realidad una divergencia de criterios entre ambas partes sobre los hechos en controversia. El promovido, en todos sus escritos, no rebate los hechos que alegó la promovente y que confirmó mediante investigación la ODIN, salvo lo atinente al precio de la compraventa. Respecto a esto, basta mencionar que la ODIN coincidió con el licenciado Román

---

[23] 4 LPRA Ap. IX.
[24] *In re Villalona Viera*, 206 DPR 360, 374 (2021).
[25] *In re: Vázquez Margenat*, supra, pág. 979.

Jiménez respecto a que no hay prueba que sugiera que el precio convenido en este negocio jurídico sea uno distinto al que se consignó en el documento.

Ahora bien, respecto a las demás alegaciones, el promovido no alega que los hechos fueron distintos. Más bien, nos invita a justipreciar estos eventos bajo una lupa distinta a la que utilizó la ODIN. Así las cosas, nos es forzoso concluir que en este asunto no hay razón alguna para postergar una determinación en los méritos sobre las faltas que se le han imputado al promovido en el descargo de su ministerio notarial.

Nada aprovecharía aplazar este asunto mediante un referido a la OPG y el nombramiento de un(a) Comisionado(a) Especial. Como discutiremos a continuación, la realidad de este caso es que las omisiones que se le imputaron al promovido se circunscriben casi totalmente a su función como notario. Ciertamente, es indudable que algunas de sus ejecutorias convergen con sus obligaciones éticas como abogado. No obstante, esto no nos obliga a darle trámite ulterior a un asunto si concluimos que basta con atender la dimensión notarial del caso.

Así pues, retornando a lo que hoy nos ocupa, colegimos que **el promovido conocía que el derecho hereditario de los vendedores no había sido inscrito,** toda vez que no se había gestionado el relevo de gravamen contributivo que concede el Departamento de Hacienda a la sucesión de una persona fallecida. Además, **conocía que el inmueble adeudaba cierta**

**cantidad en contribuciones territoriales destinadas para el CRIM.**

No empece a esto, el promovido les facturó a los otorgantes por las gestiones relacionadas a (1) la obtención del relevo de hacienda, (2) el cambio de titularidad ante el CRIM, (3) la presentación de las respectivas declaratorias de herederos y (4) la presentación para su inscripción de la escritura de compraventa. Transcurridos más de tres (3) años desde que había autorizado el instrumento público, el licenciado Román Jiménez no había encaminado ninguno de estos procesos.

En su defensa, la postura reiterada del promovido es que la ausencia de estos trámites era algo conocido para los otorgantes. En lo atinente a la deuda del CRIM, ha insistido que los otorgantes fueron advertidos de la necesidad de obtener una certificación de deuda emitida por esa agencia. Afirma, que la gestión de pagar la deuda al CRIM le competía a la parte vendedora y que el hecho de que no se hubiera hecho no le es imputable. A su entender, bastaba con el hecho de que se había obtenido un cheque de gerente para saldar la deuda, pese a que no tenía conocimiento de si el dinero había sido pagado al CRIM. Como ya sabemos, ese pago no se hizo hasta hace escasos meses. Peor aún, sabiendo que existía una deuda y desconociendo si esta se había pagado, el promovido afirmó en la escritura de compraventa que el inmueble se encontraba libre de cargas y gravámenes.

Todo lo anterior representa una crasa desviación de los deberes de puntillosidad, honestidad y competencia que deben caracterizar al notariado. El promovido, por mandato del Código de Rentas Internas, *supra*, debió haberse negado a autorizar la escritura hasta en tanto se satisficiera la deuda al CRIM, se radicara exitosamente cada *Planilla de Caudal Relicto* y se obtuvieran los correspondientes relevos de gravamen contributivos.

Permitir que el asunto se alargara por espacio de tres (3) años sin mantener comunicación con los otorgantes resulta en una clara violación de las disposiciones imputadas. Evidentemente, el licenciado Román Jiménez se apartó de los principios cardinales recogidos en el Art. 2 de la Ley Notarial de Puerto Rico, *supra*. Ademas, infringió los deberes de competencia, comunicación y honradez que establecen los Cánones 18, 19 y 35 del Código de Ética Profesional, *supra*.

Ponderando así las omisiones incurridas por el promovido, solo nos resta determinar la sanción que corresponde. Para ello, hemos de considerar varios factores, incluyendo: (1) la buena reputación del abogado en la comunidad; (2) su historial previo; (3) si esta constituye su primera falta y si ninguna parte ha resultado perjudicada; (4) la aceptación de falta y su sincero arrepentimiento; (5) si se trata de una conducta aislada; (6) el ánimo de lucro que medió en su actuación; (7) resarcimiento al cliente, y (8) cualesquiera otras

consideraciones, ya sean atenuantes o agravantes, en relación con los hechos.[26]

**IV**

Por los fundamentos previamente consignados, **decretamos la suspensión inmediata del licenciado Román Jiménez del ejercicio de la notaría por el término de tres (3) meses.**[27]

Le ordenamos notificar a todas las personas que han procurado sus servicios notariales de su inhabilidad para atender los trabajos que tenía pendientes y devolverles tanto los expedientes como los honorarios notariales recibidos por trabajos no rendidos.

Además, deberá acreditar y certificar ante este Tribunal el cumplimiento con lo anterior dentro del término de treinta (30) días, a partir de la notificación de esta *Opinión Per Curiam* y *Sentencia*. No hacerlo pudiera conllevar que no se le reinstale al ejercicio de la notaría de solicitarlo en el futuro.

Se le ordena al Alguacil de este Tribunal que proceda inmediatamente a incautar el sello y la obra notarial del licenciado Román Jiménez para que sea debidamente custodiada e inspeccionada por la Oficina de Inspección de Notarías.

---

[26] *In re: Stacholy Ramos*, 207 DPR 521, 531 (2021); *In re: Rivera Contreras*, 202 DPR 73, 92 (2019).
[27] Para efectos comparativos, véase, *In re: Velez Torres*, 209 DPR 848 (2022). Destacamos adicionalmente, que el licenciado Román Jiménez fue objeto de una suspensión de treinta (30) días del ejercicio de la notaría. *In re: Román Jiménez*, 161 DPR 727 (2004).

De conformidad con la Ley Núm. 69 de 9 de marzo de 1911, según enmendada, 30 LPRA sec. 1725 et seq., se da por terminada la última fianza otorgada. Así se garantizan las funciones notariales del notario y la fianza se considerará buena y válida por tres (3) años después de su terminación para los actos realizados por el fiado durante el periodo en que estuvo vigente.

Se le apercibe al licenciado Román Jiménez que en el futuro deberá dar fiel y estricto cumplimiento a los postulados ético-legales que surgen de la Ley Notarial de Puerto Rico, el Reglamento Notarial, el Código de Ética Profesional y las otras leyes que inciden en el ejercicio del notariado.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| *In re*:<br><br>Rafael H. Román Jiménez<br><br>(TS-9,606) | AB-2023-0057 | Conducta<br>Profesional |

**SENTENCIA**

En San Juan, Puerto Rico, a 6 de febrero de 2024.

Por los fundamentos previamente expuestos en la *Opinión Per Curiam* que antecede, decretamos la suspensión inmediata del licenciado Román Jiménez del ejercicio de la notaría por el término de tres (3) meses.

Le ordenamos notificar a todas las personas que han procurado sus servicios notariales de su inhabilidad para atender los trabajos que tenía pendientes y devolverles tanto los expedientes como los honorarios notariales recibidos por trabajos no rendidos.

Además, deberá acreditar y certificar ante este Tribunal el cumplimiento con lo anterior dentro del término de treinta (30) días, a partir de la notificación de esta *Opinión Per Curiam* y *Sentencia*. No hacerlo pudiera conllevar que no se le reinstale al ejercicio de la notaría de solicitarlo en el futuro.

Se le ordena al Alguacil de este Tribunal que proceda inmediatamente a incautar el sello y la obra notarial del licenciado Román Jiménez para que sea debidamente custodiada e inspeccionada por la Oficina de Inspección de Notarías.

De conformidad con la Ley Núm. 69 de 9 de marzo de 1911, según enmendada, 30 LPRA sec. 1725 *et seq.*, se da por terminada la última fianza otorgada. Así se garantizan las funciones notariales del notario y la fianza se considerará buena y válida por tres (3) años después de su terminación para los actos realizados por el fiado durante el periodo en que estuvo vigente.

Se le apercibe al licenciado Román Jiménez que en el futuro deberá dar fiel y estricto cumplimiento a los postulados ético-legales que surgen de la Ley Notarial de Puerto Rico, el Reglamento Notarial, el Código de Ética Profesional y las otras leyes que inciden en el ejercicio del notariado.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez no intervino.




                        Javier O. Sepúlveda Rodríguez
                         Secretario del Tribunal Supremo