EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: <br><br><br> Carlos R. Torres Torres <br> (TS-13,334) | 2024 TSPR 84 <br><br> 214 DPR ___ |

Número del Caso:  CP-2019-0011
                  (AB-2017-0144)


Fecha:  2 de agosto de 2024


Oficina del Procurador General:

    Lcda. Lorena Cortés Rivera
    Subprocuradora General

    Lcda. Mabel Sotomayor Hernández
    Subprocuradora General

    Lcdo. Omar Andino Figueroa
    Subprocurador General

    Lcda. Minnie H. Rodríguez López
    Procuradora General Auxiliar

    Lcda. Yaizamarie Lugo Fontánez
    Procuradora General Auxiliar

    Lcda. Juliana N. Castro Ramos
    Procuradora General Auxiliar


Representante legal del querellado:

    Lcdo. Luis J. Marín Rodríguez


Comisionada Especial:

    Hon. Isabel Llompart Zeno


Materia:  Conducta Profesional – Suspensión inmediata del ejercicio de la abogacía por el término de tres (3) meses por infracción a los Cánones 6, 9, 12, 17, 35 y 38 del Código de Ética Profesional.


Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re:*

Carlos R. Torres Torres          CP-2019-0011
        (TS-13,334)              (AB-2017-0144)

*PER CURIAM*

En San Juan, Puerto Rico, a 2 de agosto de 2024.

Una vez más nos vemos obligados a suspender inmediatamente, y por un término de tres (3) meses, del ejercicio de la abogacía a un miembro de la profesión legal que infringió los Cánones 6, 9, 12, 17, 35 y 38 del Código de Ética Profesional, *infra*; en esta ocasión, por su comportamiento en determinado procedimiento adjudicativo administrativo celebrado ante la Comisión de Investigación, Procesamiento y Apelación (en adelante, "CIPA"). Veamos.

I.

El Lcdo. Carlos R. Torres Torres (en adelante, "licenciado Torres Torres") fue admitido al ejercicio de la abogacía el 28 de junio de 2000.

El 20 de abril de 2017, notificada el 17 de mayo del mismo año, la CIPA[1] emitió una *Resolución de descalificación del Lcdo. Carlos Torres* (en adelante, "*Resolución*") en el caso *Ex Sgto. José Martínez Torres #5-625 v. Municipio de San Juan*, 17-PM-46.[2] En ésta, la referida agencia administrativa ordenó elevar el expediente del caso a este Foro para que evaluáramos la conducta del licenciado Torres Torres. El referido escrito se acogió como una *Queja* y se le asignó el alfanumérico AB-2017-0144.

En síntesis, la *Resolución* traída a nuestra atención alude a ciertos hechos ocurridos en dos comparecencias ante la CIPA en las que el licenciado Torres Torres representaba a la parte apelante, el Sr. José Martínez Torres.[3] Según el referido realizado por los Comisionados a cargo del caso en cuestión, el mencionado letrado realizó imputaciones falsas contra la parte apelada, el Municipio de San Juan y los Comisionados, interrumpió constantemente durante las vistas,

---

[1] Esta Comisión es el cuerpo apelativo con jurisdicción exclusiva para oír y resolver apelaciones interpuestas por los funcionarios públicos de la Rama Ejecutiva o municipales con capacidad para efectuar arrestos, cuando a éstos o a éstas se les haya impuesto alguna medida disciplinaria por violar los reglamentos que les rigen. Art. 2 de la Ley Núm. 32 de 22 de mayo de 1972 (1 LPRA sec. 172). Véase, *Torres Rivera v. Policía de PR*, 196 DPR 606 (2016); *González y otros v. Adm. de Corrección*, 175 DPR 598 (2009); *Arroyo v. Policía de P.R.*, 143 DPR 265 (1997).

[2] La *Resolución* fue emitida por la comisionada Griselle M. Robles Ortiz, el comisionado Juan Ortiz Torrales y el comisionado Miguel A. Rivera Arroyo.

[3] Debido a que la controversia allí planteada no es pertinente para la disposición del asunto ante nuestra consideración, no entraremos en detallar la misma. Ahora bien, la controversia estaba relacionada a la destitución del Sr. José Martínez Torres como sargento de la Policía Municipal de San Juan. Esto se debió a ciertos comentarios de naturaleza sexual a una compañera de la uniformada.

utilizó un tono innecesariamente alto, fue irrespetuoso, destemplado, insultante y dilató los procedimientos.[4]

En específico, se alegó que el 1 de febrero de 2017 la CIPA citó a las partes para celebrar la vista en su fondo, la cual fue presidida por la comisionada Barbara M. Sanfiorenzo Zaragoza (en adelante, "comisionada Sanfiorenzo Zaragoza"). Desde el inicio de la vista, el licenciado Torres Torres interrumpió en múltiples ocasiones a la comisionada Sanfiorenzo Zaragoza, impidiendo un manejo adecuado de los procesos y dilatando la vista.

Además, el mencionado letrado adujo que la parte apelada no le había hecho entrega de unos cincuenta (50) documentos que serían utilizados en la vista en su fondo. Lo anterior, según expone la CIPA en su referido, resultó ser

---

[4] Entre lo ocurrido, y a modo de ejemplo, el *Informe de la Comisionada Especial al Honorable Tribunal Supremo* expone lo siguiente:

> Ejemplo de esto es durante la vista del 1 de febrero de 2017, cuando se discutía el asunto del descubrimiento de prueba que él solicitó el 11 de octubre de 2016, que en voz retante le expresó a la comisionada Sanfiorenzo: "perdóneme?, estamos resolviendo mociones hoy, el día de la vista?. Otro ejemplo es la imputación a la CIPA de que no le permitían hacer sus planteamientos: "la técnica de impedir los planteamientos de derecho...". También criticó a la comisionada Sanfiorenzo al responderle en un momento "no haga esos comentarios". También le cuestionó por qué no habían hecho antes el proceso de informar la prueba. En cuanto a imputaciones falsas, cuestionó la objetividad e imparcialidad de los comisionados Sanfiorenzo Zaragoza y Rivera Arroyo al expresar en la moción de recusación del 17 de abril de 2017 que la CIPA tiene una práctica de suspender vistas y seguir dándole oportunidades al Municipio de San Juan y que eso "debe cesar ya, no hacerlo continúa erosionando la confianza pública en esta agencia". Véase, pág. 37.

Es importante señalar que, no es tan solo lo expresado por el licenciado Torres Torres, sino la forma como lo dijo, la cual se desprende de las grabaciones de las vistas celebradas ante la CIPA que están en nuestro poder. Véase, *Regrabación de vistas ante la CIPA de Martínez Torres v. Municipio de San Juan* celebradas el 1 de febrero de 2017 y el 19 de abril de 2017.

falso, ya que, luego de corroborar en la vista uno por uno los documentos que se le habían hecho entrega, éste los tuvo en su poder con antelación.

De igual forma, y durante la vista celebrada el 1 de febrero de 2017, el licenciado Torres Torres presuntamente cuestionó la composición de la CIPA, su autoridad, la expiración de los nombramientos de los Comisionados y levantó argumentos sobre si la agencia sobreviviría la reorganización gubernamental que se llevaba a cabo en aquel momento. Todo esto, según expresan los Comisionados de la CIPA, ocurrió frente a las partes y testigos citados para el caso que se suponía se ventilaría en su fondo durante ese día, pero que tuvo que ser pospuesto para los días 19 y 20 de abril de 2017 dado lo aquí reseñado.

Así las cosas, y dos días antes de que se celebrara la vista según fue señalada, el 17 de abril de 2017, el mencionado letrado presentó ante la CIPA una *Moción para solicitar recusación de la comisionada Sanfiorenzo Zaragoza y del comisionado Rivera Arroyo*.[5] En ésta, el letrado arguyó que el 1 de febrero de 2024 el Presidente de la CIPA, el comisionado Heriberto Sepúlveda Santiago (en adelante, "comisionado Sepúlveda Santiago"), -- quien se había inhibido del caso por tener contratos con el Municipio de San Juan, parte apelada en el procedimiento administrativo

---

[5] Cabe destacar que, en la vista celebrada el 1 de febrero de 2017 la comisionada Sanfiorenzo Zaragoza, quien presidió la misma, había informado que no estaría en Puerto Rico para los días en que se había pautado la vista en su fondo.

como ya mencionamos --, había tenido contacto con los otros dos Comisionados que participaron en la vista.[6] Por lo anterior, expresó que se había destruido la confianza del apelante de que se realizaría un procedimiento justo, por lo que solicitó la recusación de los Comisionados.

El 19 de abril de 2017 la comisionada Griselle M. Robles, quien presidió la vista, evaluó en primer lugar la solicitud de recusación presentada por el mencionado letrado. Tras brindarle la oportunidad al licenciado Torres Torres para que argumentara su petición, y éste continuar realizando expresiones cuestionando la objetividad de la CIPA e interrumpiendo a la Comisionada que presidía el proceso, los Comisionados dejaron sin efecto los señalamientos para la vista en su fondo, informaron que el caso no se señalaría hasta tanto se atendiera la moción de recusación y dieron por terminada la vista.[7]

Así pues, tras evaluar las grabaciones de las precitadas vistas, como mencionamos previamente, el 17 de mayo de 2017 la CIPA emitió la *Resolución de descalificación del Lcdo. Carlos Torres*. En ésta, la CIPA ordenó la descalificación del mencionado letrado por entender que las

---

[6] En específico, el licenciado Torres Torres alegó que el 1 de febrero de 2017, previo a la celebración de la vista, el Presidente de la CIPA, comisionado Sepúlveda Santiago, entró al salón de audiencias, miró fijamente a su cliente y a éste, y luego entró al salón en donde estaban deliberando los dos comisionados que participarían de la vista posteriormente.

[7] Para un resumen de los hechos ocurridos y una transcripción no oficial de lo ocurrido en las vistas de 1 de febrero de 2017 y 19 de abril de 2027 véase, la *Resolución de descalificación del Lcdo. Carlos Torres*, emitida por la CIPA el 17 de mayo de 2017.

acciones de éste violentaron la dignidad de la agencia y de sus Comisionados. Por último, ordenaron que se notificara copia de su determinación a este Tribunal para que se evaluara si el licenciado Torres Torres violentó uno o varios Cánones de Ética Profesional, *infra*.

Recibida la determinación de la CIPA, y tras acogerla como la *Queja* AB-2017-0144, esta Curia concedió un término de diez (10) días para que el mencionado letrado contestara la misma. Tras cierta solicitud de una prórroga, el licenciado Torres Torres compareció ante nos el 3 de julio de 2017.

En extrema síntesis, el mencionado letrado reiteró sus alegaciones en cuanto al conflicto de interés que tiene el comisionado Sepúlveda Santiago con la CIPA, por tener contratos de asesoría legal con el Municipio de San Juan. De igual forma, sostuvo que el referido comisionado intervino en el caso en el que éste fungía como representante legal de una de las partes.

Habiéndose referido este asunto ante su consideración, el 18 de febrero de 2018 la Oficina del Procurador General presento su *Informe del Procurador General*. En éste, -- luego de evaluar lo expresado por ambas partes --, concluyó que el licenciado Torres Torres incurrió en conducta contraria a los Cánones 6 (conducta ante agencias gubernamentales), 9 (conducta del abogado ante los tribunales), 12 (puntualidad y tramitación de las causas), 17 (litigios injustificados), 35 (sinceridad y honradez) y 38 (preservación del honor y

dignidad de la profesión) del Código de Ética Profesional, *infra*.

Evaluado el *Informe del Procurador General*, y tras el mencionado letrado tener la oportunidad de expresarse sobre el mismo, el 29 de junio de 2018 emitimos una *Resolución* mediante la cual le ordenamos a la Oficina del Procurador General presentar la correspondiente querella.[8]

A esos efectos, el 4 de diciembre de 2020 la Oficina del Procurador General presentó la *Querella* aquí en consideración. En ésta formuló los siguientes cargos:

### Cargo I, II y III

El licenciado Carlos Torres Torres incurrió en conducta contraria a los Cánones 6, 9 y 12 de Ética Profesional, 4 LPRA Ap. IX, C.6, C.9 y C. *12.*[...]

Los hechos demuestran que el licenciado Torres, durante el trámite del caso, cuestionó la capacidad de los integrantes de la Comisión, su objetividad y su toma de decisión, realizó ataques injustificados en contra del entonces Presidente de la CIPA, licenciado Heriber[t]o Sepúlveda, y faltó al deber de comportarse con decoro, respeto y solemnidad en trámites cuasi-judiciales. También, obstaculizó el trámite del caso y la pronta solución de la controversia que tenía ante sí la CIPA. Prueba de ello fue la presentación tardía de la solicitud de recusación de varios Comisionados, lo cual causó que el día que iniciaba la vista en su fondo, se atendiera dicha solicitud, dilatando innecesariamente el caso.

### Cargo IV

El licenciado Torres incurrió en conducta contraria al Canon 17 de Ética Profesional, 4 LPRA Ap. IX, C. 17, al presentar una solicitud de inhibición en contra de la Comisionada Bárbara M. Sanfiorenzo Zaragoza, con el conocimiento de que esta no tenía ni tendría participación alguna en la vista en su fondo a ser celebrada, y otra en

---

[8] La Jueza Presidenta Oronoz Rodríguez no intervino.

contra del Comisionado Miguel A. Rivera Arroyo, sin contar con prueba para sostener dicha solicitud.[...]

**Cargo V**

De los hechos previamente esbozados surge que el licenciado Torres adujo que la parte apelada no le había facilitado cierta documentación, lo cual no era cierto. Además, solicitó la recusación de la Comisionada Sanfiorenzo cuando conocía que ésta no iba a participar del caso. Dichas actuaciones son contrarias al deber de sinceridad y honradez[, Canon *35* de Ética Profesional, 4 LPRA Ap. IX, C. *35,*] que se le requiere a todo abogado.

**Cargo VI**

El licenciado Torres incurrió en conducta contraria a lo establecido en el Canon 38 de Ética Profesional, 4 LPRA Ap. IX, C. 38, el cual le impone a todo abogado el deber de exaltar el honor y la dignidad de la profesión a la que pertenece y no incurrir en conducta impropia y/o la apariencia de la misma.

Los hechos antes reseñados claramente demuestran que la conducta y comportamiento del licenciado Torres no exaltó el honor y la dignidad de la profesión a la que pertenece, y que incurrió en conducta impropia. *Querella*, Oficina del Procurador General, 4 de diciembre de 2020, págs. 3-5.

Tras haber sido contestada la *Querella* por el licenciado Torres Torres, el 14 de octubre de 2022 emitimos una *Resolución*. En ésta, designamos a la Hon. Isabel Llompart Zeno (en adelante "comisionada especial Llompart Zeno"), ex jueza del Tribunal de Primera Instancia, como Comisionada Especial.

Luego de un extenso trámite procesal, el 26 de febrero de 2024 la comisionada especial Llompart Zeno presentó su *Informe de la comisionada especial al Honorable Tribunal Supremo* (en adelante, "*Informe*"). En éste, concluyó que, en

primer lugar, el mencionado letrado desplegó conducta irrespetuosa al interrumpir continuamente a los Comisionados de la CIPA en las dos vistas a las que compareció. Además, razonó que el tono de voz alto y su continua y repetida actitud argumentativa fueron desafiantes y retantes, al extremo que parecía que intentaba controlar el procedimiento. De igual forma, la Comisionada Especial estableció que el letrado: (1) realizó imputaciones infundadas contra el Presidente de la CIPA tanto en sus escritos, como en las vistas; (2) criticó y cuestionó despectivamente las decisiones de la CIPA, y (3) y realizó imputaciones falsas sobre la imparcialidad de los comisionados Sanfiorenzo Zaragoza y Rivera Arroyo lo que constituye violaciones a los Cánones 6 y 9 del Código de Ética Profesional, *supra*.

De otra parte, la comisionada especial Llompart Zeno expuso que el licenciado Torres Torres presentó de forma tardía la solicitud de recusación de los comisionados. En particular, que el letrado esperó setenta y cinco (75) días para presentar su recurso, dos (2) días antes de la vista señalada, de forma tardía, sin fundamento válido y con el propósito de entorpecer los procesos ante la CIPA, en clara violación del Canon 12 del Código de Ética Profesional, *supra*.

Además, la Comisionada Especial determinó que el mencionado letrado realizó alegaciones y llegó a conclusiones sin prueba en sus escritos ante la CIPA. Por lo

antes expresado, entendió que éste violentó el Canon 17 del Código de Ética Profesional, *supra*, al certificar, mediante su firma, que las alegaciones que realizó estaban bien fundamentadas.

La comisionada especial Llompart Zeno sostuvo, además, que el licenciado Torres Torres infringió el Canon 35 del Código de Ética Profesional, *supra*, al haber faltado a la verdad, y de esta forma inducir a error a los Comisionados en la vista celebrada el 19 de abril de 2017. Esto, cuando hizo referencia a hechos que nunca ocurrieron en la vista que se celebró el 1 de febrero de 2017.

Finalmente, la Comisionada Especial concluyó que el mencionado letrado exhibió una conducta contraria al Canon 38 del Código de Ética Profesional, *supra*, en particular, al no ser honesto y no actuar con el más escrupuloso sentido de responsabilidad.

Así las cosas, la comisionada especial Llompart Zeno determinó que se logró establecer con prueba clara, robusta y convincente que el licenciado Torres Torres violó los cánones 6, 9, 12, 17, 35 y 38 del Código de Ética Profesional, *supra*. Ahora bien, ésta nos solicitó que, al momento de determinar la sanción correspondiente, tomemos en consideración que el letrado ofreció sus disculpas en tres (3) ocasiones durante el procedimiento de la querella y que, previamente, no ha sido objeto de sanción disciplinaria por parte de este Tribunal.

Tras evaluar los expedientes de la *Queja* y la *Querella*, así como el *Informe* emitido por la Comisionada Especial y escuchar las grabaciones de las vistas celebradas en la CIPA el 1 de febrero de 2017 y 19 de abril de 2017, procedemos, pues, a disponer del presente proceso disciplinario.

II.

A.

Como es sabido, este Tribunal tiene el deber de asegurar que los y las profesionales del Derecho, que sean admitidos al ejercicio de la abogacía, realicen sus funciones de forma competente, responsable, diligente, *In re Sánchez Rivoleda*, 2024 TSPR 32, 213 DPR __ (2024); *In re Nicot Santana*, 2024 TSPR 21, 213 DPR __ (2024); *In re Montañez Morales*, 212 DPR 781, 790 (2023), y de conformidad con lo dispuesto en el Código de Ética Profesional, 4 LPRA Ap. IX. Este último, siendo el cuerpo legal donde se recogen las normas de conducta que rigen a los miembros de la profesión legal en nuestro País. *In re Arzola Méndez*, 212 DPR 235, 239 (2023); *In re Bauzá Tirado*, 211 DPR 633, 635 (2023); *In re González Soto*, 211 DPR 621, 628 (2023).

Sobre el particular, hemos sentenciado que este ordenamiento deontológico tiene como propósito principal promover el desempeño personal y profesional de los abogados y las abogadas de acuerdo con los más altos principios de conducta decorosa, lo que, a su vez, redunda en beneficio de la profesión legal, la ciudadanía y las instituciones de justicia. *In re Navedo Dávila*, 203 DPR 300, 306 (2019); *In*

re *Cruz Liciaga*, 198 DPR 828, 834 (2017); *In re Franco Rivera*, 197 DPR 628, 634 (2017). Cónsono con ello, en numerosas ocasiones, este Tribunal ha señalado que el incumplimiento con estas normas éticas puede acarrear la imposición de sanciones disciplinarias severas. *In re González Soto*, *supra*, pág. 628; *In re Rodríguez Lugo*, 201 DPR 729, 736 (2019); *In re Cruz Liciaga*, *supra*, pág. 835. Entre ellas se encuentra, claro está, la suspensión del ejercicio de la abogacía y la notaría.

B.

Establecido lo anterior, y ya más en lo relacionado al proceso disciplinario ante nuestra consideración, es menester señalar que es el **Canon 6** del Código de Ética Profesional, *supra*, el que, en esencia, regula todo lo relacionado a la conducta de los miembros de la clase togada ante las agencias gubernamentales. *In re Bonhomme Meléndez*, 202 DPR 610, 621 (2019); *In re Pagán Torres*, 194 DPR 925, 928 (2016); *In re Morales Velázquez*, 156 DPR 212, 217 (2002). En particular, el referido canon expone que, cuando un abogado o una abogada brinda servicios profesionales ante organismos administrativos, "debe[rá] observar los mismos principios de ética profesional que exige su comportamiento ante los tribunales". Canon 6 del Código de Ética Profesional, *supra*. Véase, *In re Bonhomme Meléndez*, *supra*, pág. 621; *In re Valentín Custodio*, 187 DPR 529, 541-542 (2012).

En ese sentido, "[e]n casos ante organismos administrativos, el Canon 6 del Código de Ética Profesional, *supra*, [...] incorpora las normas que bajo el Canon 9, *supra*, se establecen para los abogados ante foros judiciales". *In re Bonhomme Meléndez*, *supra*, pág. 622. Por tal razón, los profesionales del Derecho que no atiendan las órdenes de una agencia administrativa en virtud del Canon 6 del Código de Ética Profesional, *supra*, incurren en un grave insulto a su autoridad, en clara violación al mandato expreso del Canon 9, *supra*. *In re Bonhomme Meléndez*, *supra*, pág. 622; *In re Pestaña Segovia*, 192 DPR 485, 493-494 (2015); *In re Valentín Custodio*, *supra*, pág. 542.

Recordemos que, el **Canon 9** del Código de Ética Profesional, *supra*, es el que exige que todo abogado o abogada observe para con los tribunales una conducta que se caracterice por el mayor respeto. *In re Cay Espinosa*, 2024 TSPR 35, 213 DPR ___ (2024); *In re Sánchez Rivoleda*, *supra*; *In re Espinosa Valentín*, 2024 TSPR 26, 213 DPR ___ (2024). Además, este canon también requiere que cuando profesionales del Derecho se dirijan al tribunal o a uno de sus funcionarios, -- aun para criticarle --, lo hagan con respeto y deferencia. *Pueblo v. Quiles Negrón et al.*, 193 DPR 609, 620 (2015); *In re Gaetán y Mejías*, 180 DPR 846, 861 (2011); *In re Crespo Enríquez*, 147 DPR 656, 662-663 (1999).[9]

---

[9] Mediante el Canon 9 de Ética Profesional, *supra*,

no se pretende imponer a los abogados una mordaza previa en cuanto a sus expresiones. Ciertamente, estos tienen el derecho de esgrimir todos los planteamientos que estimen

En cuanto al **Canon 12** del Código de Ética Profesional, *supra*, éste es el que le requiere a los profesionales del Derecho que sean puntuales y exactos en la tramitación y presentación de las causas en las que representan a alguna parte, desplegando todas las diligencias necesarias para evitar dilación en el proceso esencial de impartir justicia. *In re Torres Alvarado*, 212 DPR 477, 486 (2023); *In re Aponte Morales*, 211 DPR 171, 186 (2023); *In re Rodríguez Lugo*, *supra*, pág. 737. Sobre el alcance del término diligencia, en el pasado hemos expresado que esto se refiere a que, el abogado o la abogada "realice las gestiones que le fueron encomendadas en momento oportuno, en forma adecuada y sin dilaciones que puedan afectar la pronta solución de la controversia". *In re Cardona Estelritz*, 212 DPR 649, 665 (2023). Véase, *In re Nieves Nieves*, 181 DPR 25, 35 (2011).

Cónsono con lo anterior, hemos establecido que se infringe este precepto si las actuaciones u omisiones de los profesionales del Derecho atrasan o ponen en riesgo la causa de acción de su cliente. *In re Pérez Rojas*, 2023 TSPR 139,

---

necesarios a favor de los derechos de sus clientes […]. No obstante, esas expresiones, escritos y críticas deben ser realizadas de manera correcta y respetuosa.

No existe justificación para que los letrados laceren la dignidad de los miembros de la Judicatura o de alguna otra persona con el fin de reclamar derechos o resolver las controversias. Es por ello que hemos reiterado que, aun en su faena de defender los derechos de sus clientes, los abogados no tienen licencia absoluta en el uso del lenguaje. El utilizar lenguaje impropio, irrespetuoso u ofensivo, en las expresiones verbales o escritas, en lugar de argumentos persuasivos, atenta contra la solemnidad y el respeto que se le debe a los tribunales y demuestra escasa competencia intelectual. (Cita depurada). *In re Ortiz Sánchez*, 201 DPR 765, 778-779 (2019).

213 DPR __ (2023); *In re Cardona Estelritz*, *supra*, pág. 665; *In re Meléndez Mulero*, 208 DPR 541, 551 (2022). Este tipo de actuaciones son infracciones patentes al Canon 12 del Código de Ética Profesional, *supra*. *In re Lajara Radinson*, 207 DPR 854, 864 (2021); *In re Blain León*, 199 DPR 443, 452 (2017).

De otra parte, actúa en contravención del **Canon 17** del Código de Ética Profesional, *supra*, todo abogado o abogada que presente un escrito con alegaciones falsas o que carezcan de prueba necesaria para sustentarlas. *In re Aponte Morales*, *supra*, pág. 187; *In re Rádinson Pérez et al.*, 204 DPR 522, 539 (2020); *In re Irizarry Rodríguez*, 193 DPR 633, 664 (2015). Más aún, si éstas inducen a error al tribunal o, como en este caso, al foro adjudicativo administrativo. *In re Rádinson Pérez et al.*, *supra*, pág. 539; *In re Pérez Guerrero*, 201 DPR 345, 355 (2018); *In re Irizarry Rodríguez*, *supra*, pág. 664.

Y es que, al suscribir un escrito judicial, los profesionales del Derecho certifican bajo su honor que leyeron el mismo y que, conforme a su juicio, información y conocimiento, está bien fundado. *In re Rádinson Pérez et al.*, *supra*, pág. 539; *In re Rivera Contreras*, 202 DPR 73, 86 (2019); *In re Guzmán Guzmán*, 181 DPR 495, 509 (2011). Por tal razón, cuando un abogado o una abogada presenta una demanda o una petición al tribunal, o a algún foro administrativo, sin tener toda la información necesaria para poder determinar si existe, o no, una causa de acción,

ciertamente falla en actuar con la máxima diligencia que impone el Código de Ética Profesional. *In re Guemárez Santiago*, 191 DPR 611, 618 (2014); *In re Guzmán Guzmán*, *supra*, pág. 509; *In re Flores Ayffán I*, 170 DPR 126, 133 (2007).

Por otra parte, en lo relacionado al **Canon 35** del Código de Ética Profesional, *supra*, éste recoge el deber que tienen los profesionales del Derecho de comportarse de forma sincera y honrada. *In re Román Jiménez*, 2024 TSPR 9, 213 DPR __ (2024); *In re Curras Ortiz*, 174 DPR 502, 505 (2008). En el ejercicio de la abogacía, este canon se incumple por el simple hecho de un abogado o una abogada faltar a la verdad, independientemente de las razones habidas para ello. *In re Raffucci Caro*, 2024 TSPR 19, 213 DPR __ (2024*); In re Lugo Quiñones I*, 206 DPR 1, 12 (2021); *In re Charbonier Laureano*, 204 DPR 351, 364 (2020). Ello es así puesto que con este precepto ético se pretende resaltar la verdad como atributo inseparable de la abogacía. *In re Raffucci Caro*, *supra*; *In re Cardona Estelritz*, *supra*, pág. 666; *In re Crespo Pendás*, 211 DPR 510, 517 (2023).

Por lo tanto, este Tribunal ha sido insistente en que los profesionales del Derecho que le proveen al tribunal información falsa o que no se ajuste a la verdad, o que oculte información que deba ser revelada, incumplen con el Canon 35, *supra*. *In re Jusino Torres*, 210 DPR 919, 933 (2022); *In re Valentín Custodio*, *supra*, pág. 547; *In re Nieves Nieves*, *supra*, pág. 45. Lo anterior es igualmente

aplicable si se actúa de dicha forma ante los foros administrativos.

Por último, el **Canon 38** del Código de Ética Profesional, *supra*, instituye el deber de todo abogado o abogada de exaltar el honor y la dignidad de su profesión, y de evitar hasta la apariencia de conducta profesional impropia. Sobre este canon en particular, esta Curia ha sentenciado que todo y toda profesional del Derecho debe desempeñarse de forma escrupulosa y guiado por un alto sentido de responsabilidad, teniendo siempre presente la función social que ejerce y la institución que representa. *In re Soto Peña*, 2024 TSPR 23, 213 DPR __ (2024); *In re Cardona Estelritz*, *supra*, pág. 667; *In re Sánchez Pérez*, *210 DPR 235,* 264 (2022).

De igual forma, "los abogados y las abogadas deben evitar, incluso, la mera apariencia de impropiedad ya que ésta puede ser perjudicial a la confianza en las instituciones de justicia y en los miembros de la profesión legal". *In re Santos Negrón*, 212 DPR 965, 977 (2023). Véase, *In re Suárez Marchán*, 159 DPR 724, 745 (2003). En consecuencia, los profesionales del Derecho deben desempeñarse de forma escrupulosa y guiados por un alto sentido de responsabilidad, teniendo siempre presente la función social que ejercen y la institución que representan. *In re Cardona Estelritz*, *supra*, pág. 667; *In re Sánchez Pérez*, supra, pág. 264; *In re Fingerhut Mandry*, 196 DPR 327, 333 (2016).

Es, pues, a la luz de la normativa deontológica antes expuesta que procedemos a disponer del proceso disciplinario que nos ocupa.

III.

En el presente caso, según ha quedado claramente demostrado, el licenciado Torres Torres realizó, -- mientras atendía cierto procedimiento ante la CIPA --, serias y falsas imputaciones en contra de la parte apelada en el mismo, entiéndase, el Municipio de San Juan, y los Comisionados que presidían el referido proceso. No conforme con ello, en el procedimiento adjudicativo administrativo en cuestión, el mencionado letrado interrumpía constantemente durante las vistas, utilizaba un tono innecesariamente alto, fue irrespetuoso, destemplado, insultante y dilató los procedimientos. Lo anterior, en presencia de su cliente y demás testigos del procedimiento que se llevaba ante la CIPA.

Siendo ello así y similar a como lo entendió la Comisionada Especial encargada de recibir la prueba, hacer las determinaciones de hecho y las conclusiones de derecho en el presente proceso disciplinario, somos del criterio, que la conducta desplegada por el licenciado Torres Torres es contraria a los Cánones 6, 9, 12, 17, 35 y 38 del Código de Ética Profesional, *supra*. Dicho comportamiento, -- contrario a los principios más elementales de nuestro ordenamiento deontológico --, no lo toleraremos.

Y es que, conducta como la demostrada por el mencionado letrado afectan el buen funcionamiento de los procesos

adjudicativos tanto en nuestros tribunales, como en los procedimientos adjudicativos administrativos. Esto, teniendo un efecto adverso en la administración de la Justicia, aspecto que todo y toda profesional del Derecho jura proteger.

IV.

Así las cosas, en vista de la conducta incurrida por el licenciado Torres Torres, y tomando en consideración el hecho de que el letrado ofreció sus disculpas por escrito en tres (3) ocasiones y que no ha sido objeto de sanción disciplinaria en el pasado, se le suspende inmediatamente del ejercicio de la abogacía por el periodo de tres (3) meses.[10]

Consecuentemente, se le impone al señor Torres Torres el deber de notificar a todos sus clientes de su inhabilidad para continuar representándolos, devolver los expedientes de los casos pendientes, así como cualesquiera honorarios recibidos por trabajos no realizados e informar inmediatamente de su suspensión a los foros judiciales y administrativos en donde tenga algún asunto pendiente. Además, tiene la obligación de acreditar y certificar ante este Tribunal el cumplimiento con lo anterior, incluyendo

---

[10] Al momento de determinar la sanción disciplinaria a imponerle al abogado por su conducta antiética, se deben de tener en consideración los factores siguientes: (1) la reputación del abogado en la comunidad; (2) su historial disciplinario; (3) si la conducta es una aislada; (4) si medió ánimo de lucro; (5) si presentó una defensa frívola de su conducta; (6) si ocasionó perjuicio a alguna parte; (7) si resarció al cliente; (8) si demostró aceptación o arrepentimiento sincero por la conducta que le fue imputada, y (9) otros atenuantes o agravantes que surjan de los hechos. *In re Soto Peña*, *supra*; *In re Raffucci Caro*, *supra*; *In re Román Jiménez*, *supra*.

una lista de los clientes y los foros a quienes le notificó de su suspensión, dentro del término de treinta (30) días a partir de la notificación de esta *Opinión Per Curiam* y *Sentencia*.

Notifíquese al señor Torres Torres esta *Opinión Per Curiam* y *Sentencia* por medio del correo electrónico registrado en el RUA.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re:*

Carlos R. Torres Torres          CP-2019-0011
      (TS-13,334)                 (AB-2017-0144)

SENTENCIA

En San Juan, Puerto Rico, a 2 de agosto de 2024.

Por las razones expuestas en la Opinión *Per Curiam* que antecede, la cual se hace formar parte de la presente Sentencia, se le suspende al Sr. Carlos R. Torres Torres inmediatamente del ejercicio de la abogacía por el periodo de tres (3) meses.

Consecuentemente, se le impone al señor Torres Torres el deber de notificar a todos sus clientes de su inhabilidad para continuar representándolos, devolver los expedientes de los casos pendientes, así como cualesquiera honorarios recibidos por trabajos no realizados e informar inmediatamente de su suspensión a los foros judiciales y administrativos en donde tenga algún asunto pendiente. Además, tiene la obligación de acreditar y certificar ante este Tribunal el cumplimiento con lo anterior, incluyendo una lista de los clientes y los foros a quienes le notificó de su suspensión, dentro del término de treinta (30) días a partir de la notificación de esta *Opinión Per Curiam* y *Sentencia*.

Notifíquese al señor Torres Torres esta *Opinión Per Curiam* y *Sentencia* por medio del correo electrónico registrado en el RUA.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.


                              Javier O. Sepúlveda Rodríguez
                               Secretario del Tribunal Supremo